Hillman, J.
The plaintiff, Truck Drivers Union Local 170 Really Trust (“Realty Trust”), through its managing trustee, Richard Foley (“Foley”), filed this summary process action against the defendant, Local 170 Teamsters Federal Credit Union (“Credit Union”), seeking possession of the leased premises at 805 Millbury Street in Worcester and payment of rental arrears. The Credit Union seeks to retain possession of the leased premises and to be relieved of its obligation to pay the arrears.
For the following reasons, judgment will enter in favor of the Realty Trust.
FINDINGS OF FACT
The Realty Trust was created by declaration of trust dated March 5, 1977 and was amended on January 4, 1998. Foley was elected managing trustee of the Realty Trust by vote of January 3, 1998; that vote was not recorded at the Registry of Deeds.
The Realty Trust owns property at 805 Millbury Street in Worcester, Massachusetts. The Credit Union is located in the basement offices of 805 Millbury Street, and has occupied space in that building as a tenant at will for more than twenty years. Pursuant to its oral agreement with the Realty Trust, the Credit Union paid a monthly rent of $600.00 for the basement offices.
On September 29, 1998, the Credit Union was served with a Notice to Terminate Tenancy at Will, issued by Foley as managing trustee and signed by the attorney for the Realty Trust. A summary process complaint, also issued by Foley as managing trustee and signed by the attorney for the Realty Trust, was served upon the Credit Union on November 23, 1998.
The Credit Union remains in possession of the basement offices of805 Millbury Street, and has failed to pay the agreed upon rent of $600.00 per month from May 1998 through June of 1999.
RULINGS OF LAW
A landlord is entitled to summary process where he establishes that a notice to quit was properly served upon the tenant, and that the landlord has a legal right to possession of the property. Summary process is intended to “secure the just, speedy and inexpensive determination” of actions between landlords and tenants. Uniform Summary Process Rule 1 (1980). “The purpose of summary process is to enable the holder of the legal title to gain possession of premises wrongfully withheld. Right to possession must be shown and legal title may be put in issue.” Wayne Investment Corporation v. Ethel Abbott, 350 Mass. 775 (1966). The Realty Trust contends that it properly served a notice to quit upon the Credit Union pursuant to G.L.c. 186, §12, and that the Credit Union failed to vacate the premises. Consequently, the Realty Trust argues that it is entitled to possession of the leased premises and a reasonable payment for use and occupancy of the leased premises over the last fourteen months.
The Credit Union contends, however, that the Realty Trust was not entitled to possession of the property because the notice to quit was not properly served. It asserts that, pursuant to the terms of the trust declaration, a majority of trustees must have voted prior to issuing the notice to quit. Additionally, the Credit Union argues that the certificate of appointment ofFoley as managing trustee was never filed with the Registry of Deeds, as required by the trust documents; the Credit Union claims that any notice to quit issued by Foley as managing trustee, without a majority vote of the trustees and without a certificate of his appointment on file at the Registry of Deeds, is ineffective to terminate the Credit Union’s tenancy at will.
No certificate exists indicating that the trustees formally conferred and reached an agreement prior to issuing the notice to quit, despite the provision in the trust document requiring a majority prior to “enter[ing] into any arrangement of the use and occupancy of the trust property.” Additionally, no notice of the appointment ofFoley as managing trustee was ever filed at the Registry of Deeds.[2] This Court finds, however, that any technical deficiencies in the process employed by the Realty Trust are inconsequential, and are not fatal to the Realty Trust’s action for summary process; the Really Trust’s failure to comply with self-imposed guidelines for appointment of trustees and eviction proceedings should not be a defense to this action.
G.L.c. 186, §12 governs the notice requirements for termination of a tenancy at will, and states that a tenancy at will may be terminated by either party. The purpose of the statute is to afford a tenant an adequate period of time in which to contest the summary process action or to make arrangements for a new residence or a new place of business. See Oakes v. Munroe, 62 Mass. 282, 286 (1851). See also, Milton v. Massachusetts Bay Transportation Authority, 356 Mass. 467, *360 471 (1969) (“purpose of notice [requirements in general are] to inform party in interest with reasonable particularity of the proposed action so that he can reasonably prepare his arguments"). Technical deficiencies in the notice to quit are not necessarily fatal to a summary process action. See McCarthy v. Harris, 17 Mass.App.Ct. 1002, 1003 (1984) (technical deficiency in notice to quit is inconsequential where tenant was not prejudiced thereby). Regardless of any technical deficiencies in the notice to quit issued by the Realty trust, it is evident that the purposes of the statute have been satisfied; the Realty Trust desires eviction of the Credit Union and the Credit Union has been given more than sufficient time to locate offices elsewhere.
Moreover, it is evident from the Realty Trust’s pursuit of this summary process action, some fourteen months after the notice to quit was served upon the Credit Union, that any action by Foley as the managing trustee has been ratified by the Realty Trust. Where an agent lacks actual authority to act on behalf of his principal, the principal may still be bound if he acquiesces in the agent’s conduct or fails to promptly disavow the agent’s conduct. Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 18 (1997). Accordingly, even if Foley was not expressly authorized to act on behalf of the Realty Trust in seeking to evict the Credit Union, his authority is derived from the Realty Trust’s ratification of his conduct in issuing the notice to quit. Ratification relates back and has the same effect as a prior grant of authority by the trust to Foley. Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 18 (1997).
Regardless of who caused the notice to quit to be issued, it is undisputed that the Realty Trust seeks eviction of the Credit Union, and that the Realty Trust is the legal owner of the premises. Accordingly, absent any meritorious defense by the Credit Union, this Court finds that the Realty Trust is entitled to possession of the leased premises.[3]
After the notice to quit was served, and the thirty day period passed, the Credit Union became a tenant at sufferance. See Lowell Housing Authority v. Save-Mor Furniture Stores, Inc., 346 Mass. 426, 431 (1963) (termination of tenancy causes tenant to become tenant at sufferance). As a tenant at sufferance, the Credit Union is responsible to pay the Realty Trust for the reasonable use of the premises during the time period it remains in occupation. G.L.c. 186, §3. This Court finds that the value of the reasonable use and occupancy of the premises occupied by the Credit Union is equal to $600.00, the amount paid each month in rent by the Credit Union.
ORDER
It is therefore ORDERED:
1. That the Realty Trust is entitled to possession of the property currently occupied by the Credit Union, the basement offices of the building located at 805 Millbury Street in Worcester; and
2. That the Realty Trust is entitled to a reasonable amount for use and occupancy of the leased premises from May 1998 through June of 1999, in the amount of the usual rental payment of $600 for the fourteen months, for a total of $8400.00.

 This Court notes that the certificate of appointment was required to be filed pursuant to the terms of the first trust document; the amended trust document does not require such filing.

 The Credit Union further contends that the Realty Trust changed the locks to the building in May or June of 1998, an action which denied the Credit Union access to the building on Saturdays, a business day for the credit union. Foley agrees that the locks to the building were changed in 1998, but testified that the Credit Union never requested that they be allowed access to the building on Saturdays, and that access would have been granted upon request. The Credit Union has not presented any evidence that it asked and was denied permission to enter the building on Saturdays, and this Court cannot credit that argument in light of Foley’s testimony to the contrary.